**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Felicia Cavanagh, et al.,

     Plaintiffs

v.

State of Nevada ex rel. Nevada Office of the Military, et al.,

     Defendants

Case No.: 2:25-cv-00919-JAD-MDC

**Order Dismissing Federal Claims and Remanding State Claims Back to State Court**

[ECF Nos. 16, 17, 22, 37, 46]

Felicia Cavanagh is the special administrator for the estate of her daughter and former guardswoman, Allison Bailey. Cavanagh brings this action along with Bailey's minor children, alleging that the Nevada Army National Guard mishandled its investigation into the sexual assault of Bailey and unlawfully discharged her. Cavanagh theorizes that the Guard's actions ultimately contributed to her daughter's deteriorating health and untimely death.

Cavanagh sues three groups of defendants: the current and former governors of Nevada as the commanders-in-chief of the Guard, the Nevada Office of the Military and the State's adjutant generals, and individual guardsmen who were connected with the investigation and operating under federal law. Cavanagh alleges that these defendants' conduct deprived her daughter of her right to substantive and procedural due process under the Fourteenth Amendment to the United States Constitution and Article 1, § 8(2) of the Nevada Constitution, along with her right to redress her grievances under the First Amendment and Article 1, §§ 9 and 10 of the Nevada Constitution. She adds that the guardsmen's conduct infringed on parent-child relationships protected by the Fourteenth Amendment. And together, Cavanagh and Bailey's

children assert state-law claims for wrongful death and intentional and negligent infliction of emotional distress.

Among other arguments, the defendants insist that jurisdictional limitations largely foreclose the federal courts from hearing this case, contending that Cavanagh gained standing too late to sue and the Eleventh Amendment of the United States Constitution precludes the state-law claims against the state defendants from being heard in this court. Defendants further argue that the United States Supreme Court's decision in *Feres v. United States*—which prohibits civilian courts from hearing federal claims arising from events occurring incidental to military service— deprives this court of jurisdiction over the remaining federal-law claims.[1]

I find that this case may proceed against the state defendants, but not in this court. The Federal Rules of Civil Procedure would allow Cavanagh to cure any standing issues related to timing, but I deny leave to amend because it would not cure the other jurisdictional defects in this case. The Eleventh Amendment requires this court to remand the state-law claims against the state defendants. And this court lacks jurisdiction over the federal defendants and the federal constitutional claims against the state defendants because these claims occurred incidental to Bailey's service in the Guard, and the Ninth Circuit's interpretation of the *Feres* doctrine precludes them. So I dismiss the federal claims and federal defendants, remand the state-law claims against the state defendants to state court, and close this case.

---

[1] *Feres v. United States*, 340 U.S. 135 (1950).

**Background[2]**

Before her discharge and untimely death, Allison Bailey was an Active Guard Reserve member of the Nevada Army National Guard.[3] Her mother, Felicia Cavanagh, alleges that Bailey attended a unit social event in which a subordinate guardsman drugged and sexually assaulted her.[4] To cope with that trauma, Bailey began self-medicating with alcohol, and her military service and the assault caused (or aggravated pre-existing) major depressive and post-traumatic stress disorders.[5]

Cavanagh alleges that Bailey reported the assault to her supervisor, Major Laurie Macafee.[6] The Guard referred the investigation to the Nevada Department of Public Safety, and the department's investigation ultimately concluded that there was not enough evidence to prosecute Bailey's alleged assailant.[7] Cavanagh contends that Macafee then retaliated against Bailey for filing a complaint by maintaining a hostile work environment—including forcing Bailey to serve as a performance evaluator for her assailant.[8] Bailey requested a unit transfer away from her assailant and supervisor and filed a complaint with the Guard's inspector general,[9] who refused to process her complaint.[10] Cavanagh alleges that Macafee also initiated a

---

[2] These facts are taken from Cavanagh's complaint, ECF No. 1-2, and are not intended as findings of facts. *Huettig & Schromm, Inc. v. Landscape Contractors Council of N. California*, 790 F.2d 1421, 1425 (9th Cir. 1986) ("Where subject matter jurisdiction is lacking, a court cannot reach the merits.").

[3] ECF No. 1-2 at 5.

[4] *Id.* at 6.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 8.

[8] *Id.* at 6.

[9] *Id.* at 7.

[10] *Id.*

3

"sensing session" to solicit complaints against Bailey[11] and that Captain Michelle Tucay—a friend of both Macafee and Bailey's assailant—conducted a biased investigation.[12]

The Guard then opened nonjudicial proceedings against Bailey under the Nevada Code of Military Justice (NCMJ)—which has no trial-by-court-martial option under § 2879 of the NCMJ—based on complaints and allegations supposedly garnered by Macafee.[13] Brigadier General Troy E. Armstrong found Bailey guilty of violations of Nevada statutes, including for an inappropriate relationship with the guardsman who she alleges sexually assaulted her.[14] Bailey's rank and income were reduced as a result.[15] Bailey appealed the decision to Brigadier General Ondra Berry, who Cavanagh claims never responded to the appeal.[16] But Berry did deny Bailey's request to medically retire, allegedly preventing her from receiving healthcare benefits through the Veterans Administration.[17] The investigation's findings resulted in an "Other Than Honorable" discharge for Bailey.[18] During this time, Bailey's health deteriorated, and she was hospitalized multiple times.[19] She ultimately died shortly after being discharged.[20]

Bailey's mother and children filed this suit in Nevada state court. They sue several different state defendants involved with the Guard: the governors (Stephen F. Sisolak and Joseph

---

[11] *Id.*

[12] *Id.*

[13] *Id. See* also Nev. Rev. Stat. § 412.2879

[14] ECF No. 1-2 at 9.

[15] *Id.* at 9–10.

[16] *Id.*

[17] *Id.* at 10.

[18] *Id.*

[19] *Id.*

[20] *Id.*

M. Lombardo), the Nevada Office of the Military, and the State's adjutant generals (Ondra Berry and Rodger Waters). They also sue the individual guardsmen involved in the investigation and operating under federal law (Troy E. Armstrong, Kevin E. Remus, Laurie Macafee, and Michelle Tucay).

Cavanagh alleges that the defendants' actions violated Bailey's federal and state constitutional due-process rights because the NCMJ does not have a trial-by-court-martial option—which Cavanagh contends would've allowed Bailey to refute the investigation's findings and the nonjudicial proceedings.[21] She also alleges that the Guard violated Bailey's petitioning rights by retaliating against her for reporting the assault.[22] Together with Bailey's children, Cavanagh also brings state-law claims for wrongful death and intentional and negligent infliction of emotional distress.[23] They further allege that the guardsmen's conduct deprived them of a parent-child relationship protected by the Fourteenth Amendment.[24] They pray for damages and an injunction barring future enforcement of § 2879 of the NCMJ because it lacks a trial-by-court-martial option.[25]

After the complaint was filed in state court, the individual guardsmen successfully obtained certification from the Attorney General that they had been operating under federal law and acting within the scope of their employment.[26] So this case was automatically removed to

---

[21] *Id.* at 11–15.

[22] *Id.* at 16–17.

[23] *Id.* at 17–18.

[24] *Id.* at 19. Bailey's children join only in the state-tort claims and the deprivation-of-parent-child-relationship claim.

[25] *Id.* at 19–20.

[26] ECF No. 2.

federal court under the Westfall Act.[27]  Each defendant now moves to dismiss it.[28]  All argue that Cavanagh lacked standing to sue when she filed the complaint because she was not yet appointed special administrator and that the statute of limitations had run even if she had.[29]  The governor-defendants additionally argue that the Eleventh Amendment bars the state-law claims against them, they are entitled to statutory immunity, the claims against them lack specificity or are not viable, and military employment is not a constitutionally protected property interest.[30]  The adjutant generals (head of the state national guard) and the Nevada Office of the Military argue that they are entitled to statutory immunity and that many of Cavanagh's claims fail to state a claim.[31]  Finally, the federal defendants collectively argue that this case was properly certified and removed under the Westfall Act, the state-law claims were converted into federal claims, the *Feres* doctrine bars the claims against them as a result, and no cause of action exists for these constitutional torts against federal officers.[32]

Cavanagh contests each point.  She counters that the Federal Rules of Civil Procedure allow her to cure the standing issue, and the Eleventh Amendment does not apply to these federal claims or injunctive relief.[33]  She also challenges the Westfall Act certification, contending that

---

[27] ECF Nos. 1, 2, 4, 4-1; *see also* 28 U.S.C § 2679 (the Westfall Act, also known as the Federal Employees Liability Reform and Tort Compensation Act of 1988).

[28] *See generally* ECF Nos. 16, 17, 37.

[29] *Id.*

[30] ECF No. 17 at 3.

[31] ECF No. 16 at 2–3.

[32] *See generally* ECF No. 37.

[33] ECF No. 21.

the federal defendants were really operating under state law.[34]  She also disputes that the *Feres* doctrine has any application here.[35]

**Discussion**

Federal Rule of Civil Procedure 12(b)(1) authorizes federal courts to dismiss a complaint for want of subject-matter jurisdiction.[36]  A Rule 12(b)(1) challenge may be either factual (contesting the truth of the complaint's allegations) or facial (contesting the sufficiency of the complaint's allegations to invoke federal jurisdiction).[37]  In resolving a facial attack, the court takes all well-pled facts in the complaint as true[38] because "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[39]  But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[40]

"A court's subject-matter jurisdiction can never be waived or forfeited, objections to the court's jurisdiction may be resurrected at any point in the litigation, and courts are obligated to

---

[34] ECF No. 43.

[35] *Id.*

[36] Fed. R. Civ. P. 12(b)(1).  Although the defendants move for dismissal under both Rule 12(b)(6) and Rule 12(b)(1), each of the grounds for dismissal in this order is properly analyzed under Rule 12(b)(1).  *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("A motion to dismiss [under] the *Feres* doctrine is properly treated as a [Rule] 12(b)(1) motion to dismiss for lack of subject matter jurisdiction."); *Jackson v. Hayakawa*, 682 F.2d 1344, 1351 (9th Cir. 1982) ("The Eleventh Amendment defense is a jurisdictional bar.").

[37] *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[38] *Safe Air*, 373 F.3d at 1039.

[39] *Id.*

[40] *Id.*

consider sua sponte requirements that go to subject-matter jurisdiction."[41]  While a party is not necessarily "entitled to notice and an opportunity to respond when a court contemplates" sua sponte dismissal for want of subject-matter jurisdiction, a court's power to dismiss under such circumstances is not "unlimited."[42]  The Ninth Circuit has instructed district courts to consider "all of the circumstances" in "determining whether the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing renders the dismissal void."[43]

### A.    Cavanagh lacked standing to bring this action, but the Federal Rules of Civil Procedure would allow her to cure that defect by amendment.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[44]  "[A] plaintiff must have standing to sue" "[t]o satisfy the 'Cases' and 'Controversies' requirement."[45]  The party asserting federal jurisdiction thus has the burden of establishing Article III standing over a case or controversy.[46]  This burden is met by showing

---

[41] *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1035–36 (9th Cir. 2013) (cleaned up); *see also* Fed. R. Civ. P. 12(h)(3).  Cavanagh's suggestion that the federal defendants' Rule 12(b)(1) motion is untimely, ECF No. 43 at 14–15, is thus unavailing because a lack of subject-matter jurisdiction may be raised at any time.  *See Kwai Fun Wong*, 732 F.3d at 1035–36.

[42] *Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003) (cleaned up) (holding that district courts may sua sponte dismiss for want of subject-matter jurisdiction after considering the totality of the circumstances, including whether the parties would be prejudiced).

[43] *Id.* (cleaned up).

[44] *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976).

[45] *Am. Encore v. Fontes*, 152 F.4th 1097, 1109–10 (9th Cir. 2025).

[46] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

that the party "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[47]

### 1. *Cavanagh lacked standing for the survivorship claims at the time of filing.*

The defendants move to dismiss all but the wrongful-death claim based on lack of standing.[48] They reason that Cavanagh is asserting Bailey's survivorship claims, but only an appointed special administrator has standing to assert a decedent's survivorship claims under Nevada law,[49] and standing must exist at the time of filing.[50] So the defendants theorize that Cavanagh lacked standing when she filed this case because the state court had not yet appointed her as the special administrator of Bailey's estate, and Cavanagh herself suffered no injury-in-fact for those claims.[51] Cavanagh responds that her complaint alleges that the court was in the process of appointing her as the special administrator.[52] She suggests that this "technical[ity]" was thus harmless and Rules 15 and 17(a)(3) allow her to cure any such defect.[53]

Cavanagh's response underappreciates defendants' standing argument. A court may not disregard standing as a "technicality." Rather, standing is indispensable, and courts "must put aside the natural urge to proceed directly to the merits of [a] dispute" and cannot "'settle' [standing] for the sake of convenience and efficiency."[54] As the Ninth Circuit and other judges

---

[47] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[48] ECF No. 16 at 7; ECF No. 17 at 9; ECF No. 37 at 15.

[49] ECF No. 16 at 7; Nev. Rev. Stat. § 41.100; Nev. Rev. Stat. §140.130(2).

[50] *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

[51] ECF No. 16 at 7; ECF No. 17 at 9; ECF No. 37 at 15.

[52] ECF No. 1-2 at 3; ECF No. 21 at 12–14.

[53] *See* ECF No. 21 at 12–14.

[54] *Raines v. Byrd*, 521 U.S. 811, 820 (1997).

in this district have held, Nevada permits survivorship claims only by special administrators who are properly appointed at the time a complaint is filed.[55]  So Cavanagh lacked standing to bring Bailey's survivorship claims when she filed this complaint.

### 2. *Cavanagh could cure her standing defects.*

But Cavanagh is right that the federal rules would allow her to avoid the harsh result of dismissal with the risk that the statute of limitations has potentially run.  Rule 15 "permits a supplemental pleading to correct a defective complaint and circumvents the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief."[56]  "The relation back doctrine of [Rule 15] is a bar to the statute of limitations,"[57] and "courts should apply the relation back doctrine of [Rule 15] liberally."[58]  A claim relates back if "(1) the basic claim [arose] out of the conduct set forth in the original pleading; (2) the party to be brought in [received] such notice that it will not be prejudiced in maintaining its

---

[55] *See, e.g.*, *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 370 (9th Cir. 1998) ("The Nevada legislature's decision to mention only estate representatives in § 41.100(3) leads naturally to the conclusion that the right to bring a survival action in Nevada is limited to the duly appointed representatives of a deceased's estate."); *Est. of Klementi By & Through Klementi v. Hartford Underwriters Ins. Co.*, 2018 WL 3242683, at *6 (D. Nev. July 3, 2018) ("[Plaintiff] did not obtain status as special administrator for the Estate until [after filing suit] when she filed the letters of special administration and oath in [state court] . . . . Thus, [plaintiff] lacked standing when she filed the lawsuit.  Her claims on behalf of the Estate are therefore denied without prejudice.").

[56] *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015) (cleaned up).  Cavanagh also raises Rule 17(a)(3), which allows ratification: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  But I find Rule 15 sufficient to resolve this issue, so I do not reach Rule 17(a)(3).

[57] *Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 979 (9th Cir. 1988).

[58] *E.W. French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1396 (9th Cir.1989).

defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it."[59]

The claims here easily satisfy this standard. The current complaint notifies the defendants of every claim, and they would suffer no prejudice by amendment because the only substantive change would be confirming that Cavanagh was appointed special administrator of Bailey's estate.[60]

Although defendants curiously do not address Cavanagh's Rule 15 argument, they generally disapprove of allowing her to cure a standing defect, asserting that standing must be invariably measured from when the complaint is filed.[61] But the Ninth Circuit has explicitly held that "parties may cure standing deficiencies through supplemental pleadings,"[62] and "broad statement[s] that 'subject matter jurisdiction must exist as of the time the action is commenced' and that a lack of subject-matter jurisdiction at the outset cannot be cured subsequently. . . do[] not extend to supplemental pleadings filed" under Rule 15.[63] So I find that Cavanagh could gain standing by filing an amended complaint that alleges that she is a properly appointed special administrator.[64] But as I explain *infra*, that amendment would be futile for the separate reasons that Cavanagh still lacks standing to pursue injunctive relief, the Eleventh Amendment requires

---

[59] *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir. 2014).

[60] *See, e.g.*, *Est. of Butler ex rel. Butler v. Maharishi Univ. of Mgmt.*, 460 F. Supp. 2d 1030, 1039 (S.D. Iowa 2006) (allowing a late-appointed administrator to amend his complaint under Rule 15 after his appointment).

[61] ECF No. 16 at 7; ECF No. 17 at 9; ECF No. 37 at 15.

[62] *Northstar Fin. Advisors*, 779 F.3d at 1044, 1046.

[63] *Id.*

[64] *See, e.g.*, *Est. of Butler*, 460 F. Supp. 2d at 1039.

11

remanding the state-law claims against the state defendants to state court, and the *Feres* doctrine bars the remaining claims.

### 3. *Cavanagh lacks standing to seek prospective relief.*

While amendment could cure most of the standing issues in this case, Cavanagh's appointment as special administrator does not give her standing to pursue prospective relief in federal court. Although no party raises the issue, "the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction,"[65] and it is readily apparent that the estate lacks standing to pursue prospective injunctive relief.[66] A plaintiff's standing to seek an injunction depends on whether she will likely suffer future injury.[67] Cavanagh, as special administrator of Bailey's estate, seeks an injunction barring the enforcement of the NCMJ. But the chances that the estate or any party to this case will be subject to the NCMJ in the future are either very low or nonexistent. So I find that Cavanagh lacks standing to seek this type of relief.

### B. The Eleventh Amendment bars the state claims against the state defendants.

The governor-defendants argue that the Eleventh Amendment bars Cavanagh and Bailey's children's state-law claims against them.[68] "[T]he Eleventh Amendment generally prevents a state and state government actors from being sued in federal court without the state's consent"[69] or Congress's abrogation of that sovereign immunity.[70] The governors do not contest

---

[65] *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

[66] *See, e.g.*, *Est. of Creason v. City of Concord*, 203 F. App'x 833, 834 (9th Cir. 2006) (unpublished) ("Any injunctive relief would obviously be ineffectual as to [decedent] because she is now deceased. Nor can her estate pursue injunctive relief because it cannot show a threat to its interests or that any redress would accompany a favorable judgment.").

[67] *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

[68] ECF No. 16 at 7.

[69] *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019).

[70] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011).

that Eleventh Amendment immunity does not bar claims brought under 42 U.S.C. § 1983 against state officials in their individual capacity,[71] but the state defendants are adamant that they have not consented to being sued in federal court on the remaining state-tort and constitutional claims.[72]

Cavanagh reiterates—as the governors concede—that the Eleventh Amendment does not bar these § 1983 claims,[73] but she does not address the state-tort and other constitutional claims and points to no affirmative waiver of Eleventh Amendment immunity for them.[74]  And indeed, Nevada has explicitly granted immunity to its guardsmen in certain situations,[75] and a recent unpublished Ninth Circuit disposition rejected the notion that Nevada's general waiver of sovereign immunity for its state employees waived Eleventh Amendment immunity for state-law tort or constitutional suits in federal court.[76]  Nor may a plaintiff circumvent the Eleventh Amendment by simply suing a state official in his individual capacity if the state is the real, substantial party in interest.[77]

---

[71] ECF No. 25 at 4.  *See also Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that the Eleventh Amendment does not bar § 1983 suits against state officials if sued in their individual capacities).

[72] *Cf. Crout v. Washington*, 149 F. App'x 601, 604 (9th Cir. 2005) (unpublished) ("[A]ll of [plaintiff's] claims against [the state and national guard] . . . are barred because the Eleventh Amendment bars suits against a state and state agencies in federal court.").

[73] ECF No. 21 at 11; ECF No. 25 at 4.

[74] *See generally* ECF No. 21 at 11.

[75] Nev. Rev. Stat. § 41.0333; Nev. Rev. Stat. § 412.154.

[76] *Cardenas-Ornelas v. Johnson*, 2026 WL 237695, at *2 (9th Cir. Jan. 29, 2026) (unpublished).

[77] *Prod. & Leasing*, 709 F.2d at 21; *Aviel*, 21 F.3d 1111, at *2 ("[The Eleventh Amendment] bar cannot be circumvented by naming defendants in their individual capacity if 'the state is the real, substantial party in interest.'").

Cavanagh's only other rejoinder is to invoke the *Ex Parte Young* exception,[78] which allows a plaintiff to sue a state officer in his official capacity in federal court if the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[79]  But that exception does not apply to claims based in state law.[80]  And as explained *supra*, Cavanagh as the estate's administrator lacks standing to pursue prospective relief related to the NCMJ.  So the *Ex Parte Young* exception is inapplicable to the state-law claims, and the Eleventh Amendment precludes this court from adjudicating the state-law claims against the governors.

### 1.   *The Eleventh Amendment applies to all state defendants in this case.*

The State raises this argument in its motion to dismiss the governors but inexplicably does not invoke the Eleventh Amendment *for itself*—the state of Nevada—or the adjutant general defendants.[81]  It is axiomatic that, absent of a waiver of sovereign immunity, state residents cannot bring a state-law action seeking monetary damages against the state, its agencies, or its employees in their official capacity in federal court.[82]  The Adjutant General of Nevada is a state official position entitled to Eleventh Amendment immunity.[83]

---

[78] ECF No. 21 at 11.

[79] *Koala*, 931 F.3d at 895.

[80] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.").

[81] Nor has the State indicated that it is waiving sovereign immunity for these defendants.  *United States v. Shell Oil Co.*, 294 F.3d 1045, 1051 (9th Cir. 2002) ("A waiver of sovereign immunity must be unambiguous, and the relevant statutory language is to be strictly construed in favor of the sovereign." (cleaned up)).

[82] *Prod. & Leasing, Ltd. v. Hotel Conquistador, Inc.*, 709 F.2d 21, 21 (9th Cir. 1983); *Aviel v. Dance*, 21 F.3d 1111, at *2 (9th Cir. 1994) (unpublished).

[83] *See, e.g.*, *Meadows v. State of Ind.*, 854 F.2d 1068, 1069 (7th Cir. 1988); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir. 1983).

"Subject matter jurisdiction is fundamental; the defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction."[84]  "The Eleventh Amendment defense is a jurisdictional bar," so "the court may bring it up on its own motion."[85]  A district court may also "on its own motion dismiss an action as to defendants who have not moved to dismiss [if] such defendants are in a position similar to that of moving defendants."[86]  Because this court has a continuing obligation to dismiss a case if there is no subject-matter jurisdiction, and the plaintiffs have had a full opportunity to brief this issue, I extend the governors' Eleventh Amendment arguments to all state defendants and find that the Eleventh Amendment bars the state-law claims against them as well.[87]

### 2.    *Remand is the right remedy.*

The parties next dispute what the proper procedural remedy is for the complexities of this case.  Cavanagh argues that the court should remand the claims barred by the Eleventh

---

[84] *Billingsley v. C.I.R.*, 868 F.2d 1081, 1085 (9th Cir. 1989) (cleaned up).

[85] *Jackson v. Hayakawa*, 682 F.2d 1344, 1351 (9th Cir. 1982); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 873 n.2 (9th Cir. 1987) ("The effect of the Eleventh Amendment must be considered sua sponte by federal courts." (cleaned up)).

[86] *Silverton v. U.S. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981).

[87] Even if the State did waive its sovereign immunity for these claims, it's doubtful that this court would have subject-matter jurisdiction over them.  All federal claims are barred by *Feres*, so there is no federal question.  *See infra* at 16–25.  Nor would it be appropriate to exercise supplemental jurisdiction over a state-law dispute heavily involving novel interpretations of Nevada statutes.  *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 715 (9th Cir. 2009) (finding decision to not exercise supplemental jurisdiction was "assuredly reasonable" when state-law "claims involved complex and novel questions of state law" and "would involve statutory construction or interpretation and state case law analysis that should be resolved by a state court" (cleaned up)); *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 102 (2d Cir. 1998) ("We think that this is an appropriate case for declining to exercise supplemental jurisdiction over these claims in view of the numerous novel and complex issues of state law they raise.").

Amendment,[88] while the state asks for outright dismissal.[89]  The Ninth Circuit seems to endorse the Eleventh and Sixth Circuit's practice of remanding to state court claims barred by the Eleventh Amendment,[90] and district courts within the Ninth Circuit have remanded parts of lawsuits barred by the Eleventh Amendment to state court.[91]  So I remand the intentional- and negligent-infliction-of-emotional-distress claims, procedural and substantive due-process claims under the Nevada constitution, and wrongful-death claims to state court, leaving only the four remaining federal constitutional and § 1983 claims against all defendants and the state-tort claims against the federal defendants.  But these remaining claims don't stay here long because they must be dismissed under the *Feres* doctrine.

**C.     The federal defendants were acting within the scope of their federal employment, and they successfully converted the state-tort claims against them into Federal Tort Claim Act causes of action.**

While the Eleventh Amendment bars the state-tort claims against the state defendants, it does not affect the state-tort claims against the federal defendants.  The federal defendants argue that they successfully converted the state-law claims against them into Federal Tort Claim Act (FTCA) claims against the government, so those claims are now barred by the *Feres* doctrine, "which prohibits suit against the government for injuries that are incident to military service."[92]  Cavanagh contends that the federal defendants were effectively state employees, or alternatively

---

[88] ECF No. 21 at 12.

[89] ECF No. 25 at 5 n.2.

[90] *Kruse v. Hawaii*, 68 F.3d 331, 335 (9th Cir. 1995).

[91] *Pahk v. Hawaii*, 109 F. Supp. 2d 1262, 1268 (D. Haw. 2000) ("[W]hen removed claims are barred by the Eleventh Amendment, the Ninth Circuit approves of the procedure of remanding those particular claims to state court.").

[92] *McConnell v. United States*, 478 F.3d 1092, 1093 (9th Cir. 2007); ECF Nos. 37, 43.

acting outside the scope of their federal employment, so *Feres* does not apply and the state-tort actions can proceed against them.[93]

### 1.     *The federal defendants were federal employees.*

Cavanagh's assertion that the federal defendants were actually state actors or operating under state law is unavailing.[94]  The federal defendants were employed by the federal government and were on full-time Active Guard Reserve orders under the authority of 32 U.S.C. § 502(f) during the relevant time period.[95]  The Ninth Circuit has recognized that authorization under that statute is sufficient to show that a guardsman was a federal employee.[96]

### 2.     *The federal defendants were acting within the course of their official duties.*

Cavanagh argues that the federal defendants were acting outside the scope of their federal employment such that the FTCA and *Feres* do not apply.[97]  But that assertion fares no better. Federal law severely limits the type of claims that can be asserted against federal-employee defendants.  The FTCA waives the federal government's sovereign immunity for state-law tort claims against the federal government and its officers in certain circumstances.[98]  And *Bivens*

---

[93] ECF No. 43 at 12–13.

[94] *Id.* at 13.

[95] ECF No. 44-1 at 6 (request for Westfall Act certification); ECF No. 4-1 (Westfall Act certification).  "[I]n ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003).

[96] *Jackson v. Tate*, 648 F.3d 729, 736 (9th Cir. 2011) (holding that a national guardsman acting under 32 U.S.C. § 502(f) was a federal employee "under the Westfall Act" because "a National Guardsman is considered a federal employee while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32").

[97] ECF No. 43 at 12–13.

[98] *Spletstoser v. Hyten*, 44 F.4th 938, 943 (9th Cir. 2022); 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .").

and its progeny authorize constitutional-tort suits against federal officers in increasingly narrow scenarios.[99]  If a federal employee is sued under state-tort law, the Westfall Act gives "federal employees absolute immunity from [state]-law tort claims arising out of acts they undertake in the course of their official duties."[100]  The Attorney General may certify that the federal employee was acting within the course of his official duties.[101]  If certification is successfully obtained, the action is automatically removed to federal court, and the state-law claims against the employee are converted into FTCA claims against the United States.[102]

That's what happened here.  Cavanagh didn't plead an FTCA claim.[103]  She and Bailey's children filed state-law tort claims against the federal defendants,[104] who successfully sought certification under the Westfall Act.[105]  Cavanagh now seemingly seeks to avoid the FTCA and the application of the *Feres* doctrine by arguing that the certification was in error because the federal defendants were acting outside the scope of their employment.[106]  But refuting a certification is a "heavy burden"; when "the United States has assumed the benefits and burdens of defending its employee, [courts] will not disturb that decision unless presented with substantial evidence requiring [them] to do so."[107]  To meet that burden, the party challenging the Attorney General's certification must "allege sufficient facts that, taken as true, would

---

[99] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971); *Harper v. Nedd*, 71 F.4th 1181, 1185 (9th Cir. 2023).

[100] *Osborn v. Haley*, 549 U.S. 225, 228 (2007).

[101] 28 U.S.C. § 2679(d)(1).

[102] *Id.*

[103] *See generally* ECF No. 1-2.

[104] *Id.*

[105] ECF Nos. 4, 4-1.

[106] ECF No. 43 at 12–13.

[107] *Clamor v. United States*, 240 F.3d 1215, 1219 (9th Cir. 2001).

18

establish that the defendant's actions exceeded the scope of his employment."[108]  The court applies Nevada law for this determination.[109]

Cavanagh argues that the certification is conclusory and the retaliatory conduct she alleges shows that the defendants acted outside the scope of their federal employment.[110]  But Cavanagh cites no cases to support this argument, and other judges in this district have found that defendants were acting within the scope of their employment even when their actions were allegedly motivated by retaliation.[111]  So Cavanagh has not met her affirmative burden to refute certification.  I thus find that the federal defendants were acting within the scope of their federal employment and that the state-law claims against the federal defendants were properly converted into FTCA claims.  Cavanagh therefore cannot avoid the application of the FTCA.

**D.    The *Feres* doctrine bars the remaining claims against the defendants.**

In *Feres v. United States*, the Supreme Court determined that Congress did not intend to waive its sovereign immunity for FTCA claims that are "incident to military service."[112]  Subsequent decisions have extended this jurisdictional bar to constitutional-tort claims brought

---

[108] *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017) (cleaned up).

[109] *Green v. Hall*, 8 F.3d 695, 698–99 (9th Cir. 1993).  Nevada applies NRS § 41.745 to determine vicarious liability.

[110] ECF No. 43 at 12–13.

[111] *See, e.g.*, *Grantham v. Durant*, 471 F. Supp. 2d 1069, 1075 (D. Nev. 2006).  Both the Ninth Circuit and Supreme Court, in other contexts, have found retaliatory conduct to be within the scope of an employee's employment.  *Tamayo v. U.S. Dep't of Lab.*, 129 F.3d 127, at *1 n.1 (9th Cir. 1997) (unpublished); *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011).

[112] *Feres*, 340 U.S. at 144–146.

under *Bivens* and § 1983.[113]  Although only the federal defendants raise *Feres*,[114] the scope of the *Feres* doctrine is expansive.  The Ninth Circuit has extended its reach to § 1983 claims against national guardsmen: "the *Feres* doctrine extends to the state National Guard units, it shields state military officers from constitutional claims brought under § 1983 to the same extent that it protects federal military personnel from defending against *Bivens* actions raising the very same claims."[115]  So if Cavanagh's claims are incidental to military service and seek money damages against the military or national guard, the *Feres* doctrine bars them.

In her briefing, Cavanagh lobs many criticisms at the *Feres* doctrine.  To be sure, the *Feres* doctrine and its consequences are indeed "harsh."[116]  And in the decades since the *Feres* decision, the shifting rationales for it have become virtually incoherent.[117]  But modifying the

---

[113] *Chappell v. Wallace*, 462 U.S. 296, 304 (1983); *Bowen*, 125 F.3d at 803 n.2.  It is also doubtful that Cavanagh has pled a *Bivens* claim.  But I do not reach that issue because *Feres* would deprive this court of subject-matter jurisdiction over it regardless.  *See id.* ("The Supreme Court has held that *Feres* applies not only to tort actions brought under the Federal Tort Claims Act, . . . but to *Bivens* actions as well.").

[114] ECF No. 37 at 5.

[115] *Bowen*, 125 F.3d at 805.  Because plaintiffs had a chance to fully brief the *Feres* doctrine in its response to the federal defendants' motion, and federal courts are under a continuing obligation to dismiss a case if it lacks subject-matter jurisdiction, I extend the federal defendants' *Feres* argument to the state defendants as well.  *See Billingsley*, 868 F.2d at 1085; *Augustine*, 704 F.2d at 1077.

[116] *Carter v. United States*, 145 S. Ct. 519, 524 (2025) (Thomas, J., dissenting) ("Courts have called the results 'harsh,' 'inequitable,' 'counter-intuitive,' 'curious,' 'unjust,' and 'far removed from the doctrine's original purposes.'").

[117] *Monaco v. United States*, 661 F.2d 129, 134 (9th Cir. 1981) ("The *Feres* doctrine today stands on shaky ground with its precise justification somewhat confused."); *Est. of McAllister v. United States*, 942 F.2d 1473, 1475 (9th Cir. 1991) ("The *Feres* doctrine . . . is highly controversial.  It has been criticized 'by countless courts and commentators,' including [the Ninth Circuit]."); *Costo v. United States*, 248 F.3d 863, 867 (9th Cir. 2001) ("[W]e have reached the unhappy conclusion that the cases applying the *Feres* doctrine are irreconcilable."); *Carter*, 145 S. Ct. at 526 (2025) (Thomas, J., dissenting) ("Do not look for a principled explanation for . . . [the Supreme Court's] *Feres* case law; there is nothing to find.").

20

doctrine is "a matter for either Congress or the Supreme Court."[118]  Until that happens, the Ninth Circuit has made it clear that "the *Feres* doctrine remains the law of the land, and [I] must undertake to apply it."[119]  "In doing so, [I] follow a long tradition of reluctantly acknowledging the enormous breadth of a troubled doctrine."[120]

### 1.    *The lack of a military-justice remedy for these monetary-damages claims does not save them from preclusion under* Feres.

Cavanagh first attempts to avoid the application of *Feres* and its progeny by arguing that the primary rationale for barring military personnel from seeking relief in civilian courts is that the military has its own system of justice.[121]  So, she reasons, the doctrine's application is dependent on the existence of an adequate alternative military system of justice.[122] And because she's challenging the constitutionality of that alternative system here—claiming that the NCMJ and its nonjudicial proceedings are inadequate because § 2879 does not allow for a trial-by-court-martial option—she contends that the *Feres* doctrine can't apply.[123]

Superficially, Cavanagh's argument sounds good.  When the Supreme Court extended the *Feres* doctrine to *Bivens* claims in *Chappell v. Wallace*, it conceded that it "has never held . . . that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service."[124]  But as the High Court later noted in *United States v. Stanley*, that language in *Campbell* "referred to redress designed to halt or prevent the

---

[118] *Carter v. United States*, 182 F.3d 924, at *2 (9th Cir. 1999) (unpublished).

[119] *Est. of McAllister*, 942 F.2d at 1476, 1480 (9th Cir. 1991).

[120] *Id.*

[121] *See* ECF No. 43 at 17–19 (citing *Chappell*, 462 U.S. at 304).

[122] *Id.*

[123] *Id.*

[124] *Chappell*, 462 U.S. at 304.

constitutional violation rather than the award of money damages."[125]  So this potential carve out applies only to claims for injunctive relief.[126]  And because Cavanagh lacks standing to pursue injunctive relief, this *Feres* exclusion does not save her claims.

### 2.    Plaintiffs' claims are incidental to military service.

Whether a claim is incidental to service depends on the applicability of the four factors articulated by the Ninth Circuit in *Johnson v. United States*: "(1) the place where the tortious act occurred; (2) the duty status of the plaintiff when the tortious act occurred; (3) the benefits accruing to the plaintiff because of his or her status as a service member; and (4) the nature of the plaintiff's activities at the time the tortious act occurred."[127]  These factors "cannot be blindly applied to determine whether an injury occurred 'in the course of activity incident to service.'"[128]  "The only way to decide whether an injury is incident to service is to consider the facts of each individual case."[129]

Each *Johnson* factor favors the applicability of the *Feres* doctrine here.  The investigation as alleged was seemingly limited to the base or related places; Bailey was investigated and discharged in her role as an active-duty guardswoman; the fact that she lost benefits due to the investigation and proceedings was a result of her Guard membership; and her activities leading

---

[125] *United States v. Stanley*, 483 U.S. 669, 682 (1987).

[126] *Wilkins v. United States*, 279 F.3d 782, 787 (9th Cir. 2002) ("[The Supreme Court's] *Feres* jurisprudence points to the conclusion that *Feres* applies only to money damages."); *Watson v. Ark. Nat. Guard*, 886 F.2d 1004, 1008 (8th Cir. 1989) ("[W]e note our agreement with the circuits that have concluded that suits by guardsmen under § 1983 claiming damages are precluded under *Chappell*.").

[127] *Spletstoser*, 44 F.4th at 948 (citing *Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir. 1983)).

[128] *Jackson*, 648 F.3d at 734.

[129] *Id.*

22

to the investigation and discharge—such as filing a complaint—and the investigation itself were consequences of her Guard membership.[130]  So *Feres* applies here and bars Bailey's survivorship FTCA and constitutional claims.  *Feres* similarly extends to Cavanagh and Bailey's children's claims for wrongful death and deprivation of a constitutionally protected parental-child relationship.  As the Ninth Circuit has explained, *Feres* applies "regardless of whether the claim is for damages sustained by the serviceman, [herself], or by [her] dependents, and regardless of the provisions of local law.'"[131]

This conclusion is consistent with the Ninth Circuit's opinion in *Bowen v. Oistead*.  The Alaska Air National Guard fired Gary Bowen from his position as a judge advocate after a superior recommended his termination for "unsatisfactory conduct" and "misconduct."[132] Bowen sued the guardsmen involved in his investigation and termination, alleging unlawful, tortious, and unconstitutional conduct.[133]  Although the court did not apply the *Johnson* factors, it had "no trouble" concluding that tortious acts related to personnel decisions are "incident to service" and barred by *Feres*.[134]  It partially based that holding on the Supreme Court's decision in *United States v. Shearer*,[135] which the Ninth Circuit characterized as noting that the "decision to discharge a serviceman is an essentially professional one and that respondent's attempt to hale

---

[130] *See* ECF No. 1-2.

[131] *Van Sickel v. United States*, 285 F.2d 87, 90 (9th Cir. 1960).

[132] *Bowen*, 125 F.3d at 802.

[133] *Id.* at 803.

[134] *Id.* at 805.

[135] *United States v. Shearer,* 473 U.S. 52, 59 (1985).

23

Army officials into court to account for their supervision and discipline of a serviceman must fail."[136]

Cavanagh's arguments to the contrary are not persuasive. She first contends that the *Johnson* factors weigh against applying *Feres* because retaliatory conduct is a tortious act that is unrelated to military service or discipline.[137] It is true that courts have held that torts by individuals typically are not covered by *Feres*.[138] But the torts in those cases involved violent or wholly unrelated conduct such as shooting fellow soldiers, theft of documents, or sexual assault.[139] And while the story of this case springs from the alleged sexual assault of Bailey, the claims don't; they challenge the Guard's investigation and personnel decisions, which fall directly within the *Feres* doctrine' scope, as illustrated by the *Bowen* case.

As a second point, Cavanagh argues that the guardsmen were really operating under state law, so the factors either weigh against applying *Feres* or are a poor fit here.[140] But as *Bowen* makes clear, *Feres* applies equally to the national guard and the military.[141]

So because each factor favors applying *Feres*, and Cavanagh's claims fundamentally relate to the Guard's personnel decisions, I find that her remaining claims occurred incident to

---

[136] *Bowen*, 125 F.3d at 805 (cleaned up).

[137] ECF No. 43 at 19.

[138] *Lutz v. Sec'y of Air Force*, 944 F.2d 1477, 1484 (9th Cir. 1991); *Spletstoser*, 44 F.4th at 959 ("[W]e agree with the district court that Spletstoser's [alleged sexual assault of a subordinate] is not barred by the *Feres* doctrine at this stage of the proceedings, and therefore the motion to dismiss was properly denied."); *Day v. Massachusetts Air Nat. Guard*, 167 F.3d 678, 684 (1st Cir. 1999) ("Instances [of torts not barred by *Feres*] would be one serviceman deliberately shooting another in the course of an on-base card game, or the on-base rape of one enlistee by another.").

[139] *See Lutz*, 944 F.2d at 1484; *see also Spletstoser*, 44 F.4th at 959.

[140] ECF No. 43 at 19.

[141] *Bowen*, 125 F.3d at 803–05.

Bailey's Guard service and are barred by *Feres*. Cavanagh thus cannot maintain this suit in federal court because she cannot bring an FTCA, *Bivens*, or § 1983 claim that is incidental to military service and seeks monetary damages against the military or national guard.[142]

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motions to dismiss **[ECF No. 16, 17, 37] are GRANTED in part**:

- All claims against defendants Armstrong, Remus, Macafee, and Tucay are **DISMISSED** as barred by the *Feres* doctrine.

- Claim 1 (deprivation of procedural due process under the U.S. Constitution), Claim 3 (deprivation of substantive due process under the U.S. Constitution), Claim 5 (First Amendment retaliation), and Claim 9 (deprivation of constitutionally protected parental-child relationships) are **DISMISSED** as barred by the *Feres* doctrine.

- Claim 2 (deprivation of procedural due process under the Nevada Constitution), Claim 4 (deprivation of substantive due process under the Nevada Constitution), Claim 6 (retaliation under the Nevada Constitution), Claim 7 (wrongful death), and Claim 8 (negligent and intentional infliction of emotional distress) to the extent that they are asserted against defendants Sisolak, Lombardo, the State of Nevada *ex rel.* Nevada Office of the Military, Berry, or Waters are **REMANDED** back to state court based on Eleventh Amendment immunity. These claims return to state court with no motions pending.

---

[142] *Id.*

IT IS FURTHER ORDERED that Plaintiff's motion to amend **[ECF No. 22] is DENIED**, and defendants' motion to stay discovery **[ECF No. 46]** is **DENIED** as moot. The Clerk of Court is directed to **REMAND** this case back to Department 17 of the Eighth Judicial District Court for Clark County, Nevada, Case No. A-25-910121-C, along **with a copy of this order and a copy of the docket sheet** for this case, and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
March 18, 2026

26